519 So.2d 1069 (1988)
JOINT VENTURES, INC., Appellant,
v.
DEPARTMENT OF TRANSPORTATION, State of Florida, Appellee.
No. BN-310.
District Court of Appeal of Florida, First District.
January 29, 1988.
Alan E. Deserio and S. Cary Gaylord, of Brigham, Moore, Gaylord, Schuster & Sachs, Tallahassee and Tampa, for appellant.
Franz Eric Dorn, Paul Martin, and A.J. Spala, Dept. of Transp., and Maxine F. Ferguson and Thomas H. Bateman, III, Gen. Counsel, Dept. of Transp., Tallahassee, for appellee.
WIGGINTON, Judge.
Appellant appeals a final order of the Department of Transportation (Department) dismissing appellant's petition to set aside a Department map of reservation recorded on appellant's property pursuant to section 337.241, Florida Statutes (1985). We have been informed by the Department that after this appeal was filed, the Department instituted condemnation proceedings and thereafter by counterclaim appellant filed an inverse condemnation action. Those proceedings have resulted in a money settlement between the parties thereby rendering moot the issues on appeal. However, we determine that the issue addressed here is one of great public importance and is likely to recur. Thus, our jurisdiction has not been destroyed. See Holly v. Auld, 450 So.2d 217, 218 n. 1 (Fla. 1984) and Sadowski v. Shevin, 345 So.2d 330 (Fla. 1977). Consequently, we retain *1070 jurisdiction to address the primary issue and, for reasons discussed herein, we affirm.
Section 337.241, Florida Statutes, provides for the preparing by the Department of maps of reservation for any road within the Department's jurisdiction to delineate the limits of proposed rights of way for the eventual widening of an existing road or for the construction of a road. Section 337.241(2), Florida Statutes (1985), provides that no development permit shall be granted by any governmental entity for new construction of any type on reserved property for five years. Pursuant to a 1986 amendment, the moratorium period has been extended to ten years. § 337.241(2)(b), F.S. (Supp. 1986).
Section 337.241(3) provides:
Upon petition by an affected property owner alleging that such property regulation is unreasonable or arbitrary and that its effect is to deny a substantial portion of the beneficial use of such property, the Department or Expressway Authority shall hold an administrative hearing in accordance with the provisions of chapter 120. When such a hearing results in an order finding in favor of the petitioning property owner, the Department or Expressway Authority shall have 150 days from the date of such order to acquire such property or file appropriate proceedings....
In November 1985, the Department filed a map of reservation as to 6.4 acres of an 8.3 acre tract owned by appellant. The evidence shows that the Department intends to use that land in its storm water management system for the runoff from additional paving resulting from the future widening of Dale Mabry Highway in Tampa. The entire tract in question is undeveloped, but the property to the north and south of it along Dale Mabry Highway has been developed industrially and commercially. The tract was acquired by appellant in 1969 as an investment and has remained essentially in an undeveloped state since that time, although at the time of the hearing, appellants had entered into a contract for sale of the property for $800,000, contingent upon the buyer being able to obtain development permits.
Appellant concedes that the filing of the map on the land in question was not an unreasonable or arbitrary action since that particular land admittedly is the most appropriate choice for the storm water drain off for the proposed project, which also is not challenged as to necessity or reasonableness. However, appellant asserts, inter alia, that subsections 337.241(2) and (3) are unconstitutional in that subsection 337.241(2) provides for the taking of land without just compensation in that the filing of the map substantially deprives appellant of the beneficial use of the land (due to the intrusive moratorium imposed as to all development) and the "remedy" provided by subsection 337.241(3) is inadequate because it amounts to a violation of due process and equal protection as it applies to appellant.
We agree with appellant that in a proper case a showing could be made that a taking has occurred via subsection 337.241(2). However, contrary to the focus of the specially concurring opinion, we find that the issue before this Court regarding the constitutionality of the statute does not hinge upon this Court's determining whether or not a taking has occurred in this particular case. That determination more properly is reserved for disposition in other proceedings, as discussed below. Our review of this statute centers on whether it unconstitutionally deprives appellant of an adequate opportunity to challenge a restriction on his property. Further, while we also agree with appellant that subsection 337.241(3) is inadequate within the circumstances of the instant case to afford appellant a proper remedy for the alleged taking, that fact is not fatal to the constitutionality of the statute because an adequate remedy is available to appellant.
Under proper circumstances, a landowner can prevail on a "taking" claim by showing that a regulation is either unreasonable or arbitrary or that it denies a substantial portion of the beneficial use of the property. See Dade County v. National Bulk Carriers, 450 So.2d 213 (Fla. 1984); Albrecht v. State, 444 So.2d 8 (Fla. 1984); *1071 Key Haven v. Board of Trustees of Internal Improvement, 427 So.2d 153 (Fla. 1982); Graham v. Estuary Properties, 399 So.2d 1374 (Fla.), cert. denied, 454 U.S. 1083, 102 S.Ct. 640, 70 L.Ed.2d 618 (1981); Nollan v. California Coastal Commission, ___ U.S. ___, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987). However, subsection 337.241(3) places the double burden upon the affected property owner to show that the challenged regulation is both unreasonable or arbitrary and that it denies a substantial portion of the beneficial use of the property. If subsection (3) were appellant's only means of obtaining just compensation for the alleged taking of its land, the statute would be unconstitutional as a denial of equal protection and due process because appellant concedes that the filing of the map of reservation was not an unreasonable or arbitrary act in this case. Thus, admittedly, appellant could not, under any circumstances in this case, meet the first prong of the requirement of subsection (3). Therefore, appellant could not obtain any relief under that subsection even though it allegedly could show a denial of a substantial portion of the beneficial use of its land, and thus, under normal standards, would be entitled to relief.
However, the inadequacy of subsection (3) in this case is not determinative of the question of the statute's constitutionality because subsection (3) merely prescribes one avenue of relief available to landowners who qualify under its requirements and who choose to avail themselves of that means of review. Basic constitutional considerations clearly provide an adequate course of relief for the alleged infringement on appellant's property. The Fifth Amendment to the Constitution of the United States and article X, section 6, Florida Constitution, provide that private property shall not be taken for public use without just compensation. Those provisions do not limit governmental interference with property rights per se, but rather secure compensation for the landowner in the event that such interference amounts to a taking. First Lutheran Church v. Los Angeles County, 482 U.S. ___, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). As stated in First Lutheran Church:
We have recognized that a landowner is entitled to bring an action in inverse condemnation as a result of "`the self-executing character of the constitutional provision with respect to compensation....'" [Citations omitted.]
482 U.S. at ___, 107 S.Ct. at 2386, 96 L.Ed.2d at 264.
The court further recognized that claims for just compensation are grounded in the constitution itself:
The suits were based on the right to recover just compensation for property taken by the United States for public use in the exercise of its power of eminent domain. That right was guaranteed by the Constitution. The fact that condemnation proceedings were not instituted and that the right was asserted in suits by the owners did not change the essential nature of the claim. The form of the remedy did not qualify the right. It rested upon the Fifth Amendment. Statutory recognition was not necessary. A promise to pay was not necessary. Such a promise was implied because of the duty imposed by the Amendment. The suits were thus founded upon the Constitution of the United States. [Citations omitted.]
482 U.S. at ___, 107 S.Ct. at 2386, 96 L.Ed.2d at 264.
Thus, the court in First Lutheran Church recognized that when a taking occurs, independent of any statutory authorization a landowner has a constitutional right to file an action in inverse condemnation in an appropriate forum, which in this state could be the circuit court. See also Key Haven.
Since appellant, pursuant to First Lutheran Church and the authorities relied upon therein, has a basic constitutional right to pursue a judicial determination of a "taking" and its entitlement to compensation for the alleged taking which purportedly occurred under section 337.241(2), the statute is not constitutionally infirm. See also Lomarch Corporation v. City of Inglewood, 51 N.J. 108, 237 A.2d 881 (1968), *1072 in which in reaching a similar result, the court determined that, to be constitutionally sound, a statute requiring a one year moratorium on property approved for residential development necessarily implied that the state would pay the landowner the value of an "option" to purchase the land for one year. We note that, as pointed out in First Lutheran Church:
Nothing we say today is intended to abrogate the principle that the decision to exercise the power of eminent domain is a legislative function.... Once a court determines that a taking has occurred, the government retains the whole range of options already available  amendment of the regulation, withdrawal of the invalidated regulation, or exercise of eminent domain.
482 U.S. at ___, 107 S.Ct. at 2389, 96 L.Ed.2d at 268.
Therefore, upon our determination that appellant has an appropriate avenue of relief for its claim of taking and its entitlement to just compensation therefor,[1] we uphold the constitutionality of subsections 337.241(2) and (3) and affirm the Department's order dismissing appellant's petition to set aside the map of reservation. The result of our holdings herein renders consideration of the remaining well presented arguments asserted by appellant unnecessary as they have become moot. Having found the question addressed to be one of great public importance, we certify the following question to the Supreme Court of Florida:
WHETHER SUBSECTIONS 337.241(2) AND (3) ARE UNCONSTITUTIONAL IN THAT THEY PROVIDE FOR AN IMPERMISSIBLE TAKING OF PROPERTY WITHOUT JUST COMPENSATION AND DENY EQUAL PROTECTION AND DUE PROCESS IN FAILING TO PROVIDE AN ADEQUATE REMEDY.
AFFIRMED.
FRANK, RICHARD H., Associate Judge, concurs.
ERVIN, J., concurs specially with written opinion.
ERVIN, Judge, specially concurring.
Although I concur with the majority's opinion in affirming the final order of the Department of Transportation (DOT) dismissing Joint Ventures' petition to set aside the map of reservation, I do so on the ground that, based upon the record before us, the constitutional issues have not been preserved for our consideration. As the record before us does not reveal that any attempt was made by the property owner or the intended purchaser to present plans for development of the property in question, we have no way of knowing whether the requisite development permits could be issued. Accordingly, I would decline to certify the question as one of great public importance.
The only provision in section 337.241 that can be said to deny an owner of a substantial portion of the beneficial use of its property is that portion restricting the issuance of a development permit for the specified period of time pending a final decision by the condemning authority to take the affected property. The mere recording of the map of reservation without more does not constitute a taking. The general rule is that plotting or planning in anticipation of a public improvement does not cause a taking or damaging of the property in question. See Miami v. Romer, 58 So.2d 849 (Fla. 1952); Annot., 37 A.L.R. 3d 127, 132 (1971). Section 337.241(2)(a) forbids the responsible permitting agency from granting development permits, as defined in Section 380.031(4), Florida Statutes,[1] in areas where roads are proposed to be constructed for a period of five years, now ten years, from the recording of the map.
*1073 I do not consider that we must necessarily assume, as appellant apparently wishes us to assume, that because the DOT recorded the map in question, the owner could not, with the consent of DOT or any other applicable agency, have secured the necessary permits, or obtained a modification of the area reserved, by securing the necessary agencies' consent to develop a portion of the property that was subjected to the restriction. Our consideration of this issue should not depend solely upon an examination of the provisions of section 337.241, but, in my judgment, involves as well an examination of other pertinent statutes that delegate powers to the responsible agencies to issue applications for such permits, or to acquire the property or initiate proceedings in eminent domain.
The language of section 337.241, restricting the issuance of development permits for the time specified must, in my judgment, by reason of the statute's reference to section 380.031(14), be read in pari materia with other pertinent provisions of statutes relating to the issuance of development permits; including Section 403.201, Florida Statutes, allowing DER to grant variances under the conditions stated in the statute; section 403.061(14)(a), authorizing DER to allow DOT "to perform any activity requiring a permit from the department ..., upon certification by [DOT] that it will meet all requirements imposed by statute, rule, or standard for environmental control and protection as such statute, rule, or standard applies to a governmental program." Additionally, Section 380.08(1), Florida Statutes, explicitly provides that no government agency may adopt a rule or regulation "that is unduly restrictive or constitutes a taking of property without the payment of full compensation, in violation of the constitutions of this state, or the United States."
In order to protect a property owner from a noncompensated taking caused by denial of a development permit, Section 380.085, Florida Statutes, provides specific judicial remedies: If the owner desires to contest the denial of same, the owner may seek review of such administrative decision in circuit court for the purpose of determining whether the agency action is an unreasonable exercise of the state's police power and constitutes a taking without just compensation. If it is determined that a taking occurred, the court is empowered to remand the matter to the agency which, within a reasonable time, may be authorized to agree to issue the permit, agree to pay monetary damages, or agree to modify its decision to deny the permit in an effort to avoid an unreasonable exercise of the police power.[2]
DOT's powers in regard to the acquisition of real property are moreover set forth in Section 337.25, Florida Statutes (authorizing it to acquire, lease, and dispose of real and personal property), section 337.26 (empowering it to execute instruments of sale, leases or conveyances), section 337.27 (permitting it to exercise its power of eminent domain by condemning all necessary lands and property for the purpose of securing transportation rights of way, including borrow pits, drainage ditches, and water retention areas), and section 337.271 (enabling it to enter into negotiations for the acquisition of property). Obviously, those provisions of section 337.241, relating to recording of maps of reservation, cannot be read in isolation from other statutes conveying the necessary authority to the responsible agencies to provide the owner full compensation, in the event of a taking, or to pursue such other steps, such as the granting of variances, in order to avoid a taking.
Central to a determination of whether the property owner has been denied a substantial portion of the beneficial use of its property, by reason of the recordation of a map of reservation, is a final determination regarding whether the property owner could have received a development permit with the concurrence of all the agencies involved. Yet, as previously stated, the record does not reveal that an attempt was *1074 made to ascertain whether any of the property affected was developable. Before we can reach the issue of the statute's constitutionality, the landowner must demonstrate that the restriction imposed caused a taking, by obtaining a final determination from the agency in question as to the application of the regulation to the property reserved. It is an elementary doctrine of constitutional law that a court will not entertain an objection to the constitutionality of a statute by one who is unable to demonstrate that he has been affected by it. See State v. Inter-American Center Authority, 84 So.2d 9, 17 (Fla. 1955); Smith v. Ervin, 64 So.2d 166, 171 (Fla. 1953); Henderson v. Antonacci, 62 So.2d 5, 8 (Fla. 1952); State ex rel. Pringle v. Dykes, 127 Fla. 665, 173 So. 904, 905 (1937); City of Cape Canaveral v. Chesnick, 227 So.2d 502, 504 (Fla. 4th DCA 1969). This doctrine has been consistently applied by the United States Supreme Court to challenges of regulations subjecting property to certain restrictions, in cases where no showing has been made of injury.
For example, in Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985), the owner of a tract of land being developed as a residential subdivision sued the County Regional Planning Commission, alleging that the application of various zoning laws and regulations to its property resulted in a taking. The United States Supreme Court held that the owner's claim was premature, because the owner had not yet obtained a final administrative decision regarding the application of the regulation to its property, nor had it utilized available state procedures for obtaining just compensation. Among other things, the owner, while submitting plans for developing its property, had not sought variances from the zoning regulations; therefore, the Court concluded that the owner could hardly maintain that the Commission's disapproval of two preliminary plats was the equivalent of a final decision that no variances would be granted. In the absence of any attempt to secure variances, the Court declined to address the taking issue.
See also MacDonald, Sommer & Frates v. Yolo County, 477 U.S. 340, 106 S.Ct. 2561, 91 L.Ed.2d 285 (1986) (the rejection by a California County Planning Commission of a property owner's submitted residential subdivision plan did not constitute a taking because the property owner had not received the County Board of Supervisors' final definitive position regarding how it would apply the regulations at issue to the particular land and, moreover, the holdings of the California state court left open the possibility that some development might yet be allowed); San Diego Gas & Electric Co. v. City of San Diego, 450 U.S. 621, 101 S.Ct. 1287, 67 L.Ed.2d 551 (1981) (appeal dismissed because it did not appear to the Court that the city's rezoning and adoption of an open space plan had deprived the utility of all beneficial use of its property); Hodel v. Virginia Surface Mining & Reclamation Association, 452 U.S. 264, 101 S.Ct. 2352, 69 L.Ed.2d 1 (1981) (claim that Surface Mining Control and Reclamation Act of 1977 (30 U.S.C.S. §§ 1201 et seq.) effected a taking was not properly before the Court, as there was nothing in the record disclosing that the claimants had availed themselves of administrative remedies, either by requesting a variance from the approximate-original contour requirements of the Act, or a waiver of the Act's surface mining restrictions); Agins v. Tiburon, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980) (challenge to constitutionality of a zoning ordinance as applied authorizing the development of between one and five single-family residences on appellants' five-acre tract was premature because, among other things, owners had not yet submitted a plan for development of their property); Penn Central Transportation Co. v. New York City, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (because the owners had not applied to the Landmarks Preservation Commission for approval of a plan other than a proposed 50-plus story office building, the Court was unable to make any determination that the Commission would deny approval for all uses that would enable the owners to *1075 derive economic benefit from their property).
The United States Supreme Court has concluded from its own summary of pertinent decisions: "Our cases uniformly reflect an insistence on knowing the nature and extent of permitted development before adjudicating the constitutionality of the regulations that purport to limit it." MacDonald, Sommer & Frates, 477 U.S. at 340, 106 S.Ct. at 2567, 91 L.Ed.2d at 295-296. Other courts have also held the taking issue to be premature for decision under similar situations. See, e.g., Kinzli v. City of Santa Cruz, 818 F.2d 1449 (9th Cir.1987) (constitutional taking claims not ripe in that owner failed to present evidence showing a rejected development plan, and a denial of a variance, or that the submission of a development plan would be excused if its application could reasonably be considered a futile act); Howell Plaza, Inc. v. State Highway Commission, 92 Wis.2d 74, 284 N.W.2d 887 (1979) (in that owner made no attempt to develop or sell its land, no determination could be made that owner was deprived of all or substantially all of the property's beneficial use). See also American Savings & Loan Association v. Marin County, 653 F.2d 364, 371 (9th Cir.1981) (plaintiff has "the heavy burden of showing that compliance with local ordinances would be futile...."). The above cases are simply representative of the rule, long since recognized, that "[t]o complain of a ruling one must be made the victim of it. One cannot invoke, to defeat a law, an apprehension of what might be done under it and which, if done, might not receive judicial approval." Lehon v. City of Atlanta, 242 U.S. 53, 56, 37 S.Ct. 70, 72, 61 L.Ed. 145, 150 (1916) (e.s.).
There is nothing in the Court's more recent opinion in First English Evangelical Lutheran Church v. Los Angeles County, 482 U.S. ___, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987), stating the contrary. First English Evangelical held that if the effect of an ordinance was such as to deprive an owner of all beneficial use of its property, the owner was entitled to compensation, even prior to the time of the ordinances's invalidation. It is important to understand that First English Evangelical did not disavow the Court's earlier opinions requiring that a taking must be established before the constitutional claim can be considered. The Court there assumed from the posture of the record before it that a taking had occurred, because the California Court of Appeal had accepted the correctness of the property owner's claim that the challenged ordinance had in fact resulted in a taking. First English Evangelical was careful to point out: "We merely hold that where the government's activities have already worked a taking of all use of property, no subsequent action by the government [such as the invalidation of a challenged ordinance] can relieve it of the duty to provide compensation for the period during which the taking was effective." 482 U.S. at ___, 107 S.Ct. at 2389, 96 L.Ed.2d at 268. The Court carefully limited its holding to the record, and cautioned that its decision did "not deal with the quite different questions that would arise in the case of normal delays in obtaining building permits, changes in zoning ordinances, variances, and the like which are not before us." Id.
Consistent, then, with what has been held by the United States Supreme Court, I conclude that Joint Ventures' constitutional attack on the statute is premature. We have no way of determining whether the regulation at issue can be considered so restrictive as to deny the property owner of all beneficial use of its property, for the reason that it does not appear from the record that the public entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property affected. I would therefore neither address the constitutional claims nor certify the question to the Florida Supreme Court as one of great public importance.
NOTES
[1] As previously noted, appellant has already apprised itself of that remedy.
[1] Section 380.031(4) defines development permit as "including any building permit, zoning permit, plat approval or rezoning, certification, variance, or other action having the effect of permitting development as defined in this chapter."
[2] Parallel judicial remedies identical to the above are also found in Sections 161.212, 253.763, 373.617 and 403.90, Florida Statutes.