640 So.2d 54 (1994)
TAMPA-HILLSBOROUGH COUNTY EXPRESSWAY AUTHORITY, Petitioner,
v.
A.G.W.S. CORPORATION, et al., Respondents.
No. 80656.
Supreme Court of Florida.
April 7, 1994.
As Clarified June 23, 1994.
William C. McLean, Jr., General Counsel, Tampa-Hillsborough County Expressway Authority, Tampa, and Thornton Williams, General Counsel and Thomas F. Capshew, Asst. General Counsel, Florida Dept. of Transp., Tallahassee, for petitioner.
S. Cary Gaylord, Marc L. Sachs, S. William Moore and Alan E. DeSerio of Brigham, Moore, Gaylord, Wilson, Ulmer, Schuster & Sachs, Tampa, for respondents.
*55 John D. Echeverria and Sharon Dennis, Washington, DC, amicus curiae for Nat. Audubon Society.
Robert P. Banks, Asst. County Atty., West Palm Beach, amicus curiae for Palm Beach County.
Thomas T. Ross, Michael P. McMahon and William C. Turner of Akerman, Senterfitt & Eidson, P.A., Orlando, amicus curiae for Orlando-Orange County Expressway Authority.
Ronald A. Zumbrun and James S. Burling, Sacramento, CA, amicus curiae for Pacific Legal Foundation.
William H. Ethier of Cohn & Birnbaum P.C., Hartford, CT, amicus curiae for The Nat. Ass'n of Home Builders.
GRIMES, Justice.
We review Tampa-Hillsborough County Expressway Authority v. A.G.W.S. Corp., 608 So.2d 52, 52 (Fla. 2d DCA 1992), in which the court certified the following question as being of great public importance:
WHETHER ALL LANDOWNERS WITH PROPERTY INSIDE THE BOUNDARIES OF INVALIDATED MAPS OF RESERVATION UNDER SUBSECTIONS 337.241(2) AND (3), FLORIDA STATUTES (1987), ARE LEGALLY ENTITLED TO RECEIVE PER SE DECLARATIONS OF TAKING AND JURY TRIALS TO DETERMINE JUST COMPENSATION.
We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
Section 337.241, Florida Statutes (1987), authorized the Department of Transportation and any expressway authority to prepare and record maps of reservation, delineating corridors of land which might be used for road widening or road construction in the future.[1] *56 Subsection (2) of the statute severely restricted development within these corridors. Subsection (3) gave an affected property owner the right to an administrative hearing, which would compel the state to acquire the affected property if it were proven that the reservation unreasonably and arbitrarily denied the owner of a substantial portion of the beneficial use of the property.
In January 1988, the First District Court of Appeal upheld the validity of the statute but certified a question to this Court regarding the constitutionality of subsections (2) and (3). Joint Ventures, Inc. v. Department of Transp., 519 So.2d 1069 (Fla. 1st DCA 1988).[2] While the question was still pending, the Tampa-Hillsborough County Expressway Authority filed a map of reservation in accordance with section 337.241, describing a corridor running north and south in an area west of the Dale Mabry Highway. The map encompassed portions of vacant property owned by A.G.W.S. Corporation and Dundee Development Group. On April 26, 1990, we declared subsections (2) and (3) of section 337.241 unconstitutional, thereby effectively eliminating the development restrictions created by the maps. Joint Ventures, Inc. v. Department of Transp., 563 So.2d 622 (Fla. 1990).
After our decision in Joint Ventures, A.G.W.S. and Dundee filed inverse condemnation actions alleging that the filing of the map of reservation constituted a temporary taking of their lands which entitled them to damages for the denial of the use of their property from July 8, 1988, to April 26, 1990. The trial court granted summary judgment in favor of A.G.W.S. and Dundee on the taking claims. In a split decision, the district court of appeal affirmed upon the authority of Orlando/Orange County Expressway Authority v. W & F Agrigrowth-Fernfield, Ltd., 582 So.2d 790 (Fla. 5th DCA), review denied, 591 So.2d 183 (Fla. 1991). In a dissenting opinion, Judge Altenbernd expressed the view that subsections (2) and (3) of section 337.241 had been invalidated on due process grounds rather than upon a theory of eminent domain or just compensation. Therefore, he asserted that A.G.W.S. and Dundee were only entitled to damages if they could prove that the map of reservation had caused them substantial economic deprivation. 608 So.2d at 55-56.
In Agrigrowth, the Fifth District Court of Appeal had construed Joint Ventures to mean that the recording of a reservation map pursuant to section 337.241 constituted a per se taking of property without just compensation because such action did not advance a legitimate state interest. Id. at 792. The court reasoned that to establish a taking it was unnecessary to show any damage or loss in market value to the property. Id. A claimant "need only show that the Authority's action in recording the reservation map invaded some property right." Id. The court determined that the reservation map invaded the landowner's property rights by imposing a development moratorium and all that remained was a jury determination of the compensation to be paid. Id.
While the instant case was pending for review in this Court, the Fifth District Court of Appeal receded from its Agrigrowth decision in Department of Transportation v. Weisenfeld, 617 So.2d 1071 (Fla. 5th DCA 1993), by rejecting the premise that a regulation always effects a taking if it does not substantially advance a legitimate state interest, irrespective of any showing of actual damage to the owner.[3] The court held that a property owner could recover compensation only if the map of reservation deprived him of all or substantial economic use of his property. *57 The court also adopted the rationale of Judge Altenbernd's dissent and certified conflict with the decision below. The First District Court of Appeal reached a similar conclusion in Department of Transportation v. Miccosukee Village Shopping Center, 621 So.2d 516 (Fla. 1st DCA 1993). Thus, the issue presented is whether Joint Ventures established a per se taking claim for affected landowners seeking just compensation or invalidated the statutory subsections as violative of due process.
As explained by Judge Griffin in her concurring opinion in Weisenfeld, there has been considerable confusion in the law of excessive land-use regulation:
The relationship between the invalidity of land-use regulation that interferes with property rights in violation of due process and land use regulation that effects a "taking" is not easily understood:
[T]he nature of the difficulty plaguing Court decisions on this issue is substantial and fundamental: It stems from a continuous failure to articulate a consistent view of the relationship between "deprivations" and "takings" when considering attacks on the constitutionality of state and local regulations restricting private property rights.
Michael J. Davis & Robert L. Glicksman, To the Promised Land: A Century of Wandering and a Final Homeland for the Due Process and Taking Clauses, 68 Or. L.Rev. 393, 394 (1989). The fifth amendment contains two discrete protections: "No person shall .. . be deprived of ... property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The first of these is commonly called the "police power;" the second is the power of eminent domain. Patrick Wiseman, When the End Justifies the Means: Understanding Takings Jurisprudence In a Legal System With Integrity, 63 St. John's L.Rev. 433, 437 (1988). One of the problems in the area of regulatory takings law is that:
[C]ourts frequently fail to make the distinction between two ways in which government may abuse its power: first, government may act arbitrarily, in violation of due process; second, government may so intrusively regulate the use of property in pursuit of legitimate police power objectives as to take the property without compensation, in violation of the just compensation clause. In the first case, the government action is simply invalid; in the second case, the government action is invalid absent compensation, and so government may either abandon its regulation or validate its action by payment of appropriate compensation, i.e., by exercising its power of eminent domain. The failure to distinguish between these two abuses of government power contributed to the confusion and apparent incoherence of taking law.
Wiseman, supra, at 438.
Weisenfeld, 617 So.2d at 1080 (Griffin, J., concurring). See also Williamson County Regional Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985).
Thus, it is evident that while both constitutional theories involve "takings" and "police power," the analysis under due process is different from the analysis under just compensation. Regulations found by the courts to be invalid because they deprive landowners of substantially all use of their property without compensation are not ordinarily struck down as unconstitutional. The government is forced to choose between paying just compensation to keep the regulation in effect or removing the regulation. In situations where state action is declared an improper exercise of police power under due process, the regulation is simply declared unconstitutional. Therefore, a land use regulation can be held facially unconstitutional without a finding that there was an uncompensated taking. The fact that we chose to strike down the statute in Joint Ventures clearly demonstrates that our decision was grounded upon due process considerations. Had we intended our decision to mean that the filing of the map of reservation constituted a per se taking, we would have left the statute intact.
*58 We acknowledge that in striking down the offending portion of the statute in Joint Ventures, we referred to the takings clauses of our state and federal constitutions.[4]Joint Ventures, 563 So.2d at 623. However, in so doing, we intended to emphasize that subsections 337.241(2) and (3) were unconstitutional because they sanctioned situations which would permit the state to take private property without just compensation. Joint Ventures should not be read to mean that all properties located within the maps of reservation were per se taken without just compensation. In fact, we expressly stated that:
[W]e do not deal [here] with a claim for compensation, but with a constitutional challenge to the statutory mechanism. Our inquiry requires [only] that we determine whether the statute is an appropriate regulation under the police power, as DOT asserts, or whether the statute is merely an attempt to circumvent the constitutional and statutory protections afforded private property ownership under the principles of eminent domain.
Id. at 625 (emphasis added).
Our emphasis upon due process was further exemplified by the opinion's focus on whether subsections 337.241(2) and (3) were proper uses of the state's police power:
We do not question the reasonableness of the state's goal to facilitate the general welfare. Rather we are concerned here with the means by which the legislature attempts to achieve that goal.
Joint Ventures, 563 So.2d at 626. The analysis with respect to whether the statutory subsections provided a proper means to a valid end exposes a standard due process inquiry. The state's goal of conserving public funds was considered legitimate, but "the means [used were] not consistent with the constitution." Joint Ventures, 563 So.2d at 626. We found that there was "no valid distinction between `freezing' property in this fashion and deliberately attempting to depress land values in anticipation of eminent domain proceedings," concluding that both were improper exercises of police power. Id. The statutory subsections were held invalid because they did not meet the requirements of due process, not because the filing of a map of reservation always resulted in a taking. Rather than holding that a per se taking had occurred, we indicated that if faced with a claim for compensation due to governmental regulation of property, "the appropriate inquiry is directed to the extent of the interference or deprivation of economic use." Id. at 625.
Therefore, we answer the certified question in the negative. However, we wish to make clear that our decision does not bar any person who owned land within maps of reservation from making a claim against the government. A taking occurs where regulation denies substantially all economically beneficial or productive use of land. Moreover, a temporary deprivation may constitute a taking. First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987). As this Court in Joint Ventures noted:
[T]he state must pay when it regulates private property under its police power in such a manner that the regulation effectively deprives the owner of the economically viable use of that property, thereby unfairly imposing the burden of providing for the public welfare upon the affected owner.
Joint Ventures, 563 So.2d at 624 (footnotes omitted). Therefore, Dundee may maintain its current inverse condemnation action and seek to prove that the map of reservation did effect a taking of its particular properties.[5]
We quash the decision below and remand for further proceedings consistent with this opinion.
It is so ordered.
OVERTON, McDONALD, SHAW, and HARDING, JJ., concur.
BARKETT, C.J., concurs with an opinion, in which KOGAN, J., concurs.
*59 BARKETT, Chief Justice, concurring.
I agree with the majority's interpretation of Joint Ventures, Inc. v. Department of Transportation, 563 So.2d 622 (Fla. 1990). I also agree with the majority that an unconstitutional taking occurs when a regulation deprives the property owner of substantially all economically beneficial or productive use of the property, see majority op. at 58, absent the nuisance type of exception most recently discussed in Lucas v. South Carolina Coastal Commission, ___ U.S. ___, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). I wish only to point out that in addition to so-called total takings and temporary takings, courts may find an unconstitutional taking under other circumstances as well. See Lucas, ___ U.S. at ___, n. 8, 112 S.Ct. at 2895 n. 8 (citing Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982)); see also Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978) (holding that ad hoc factual analysis is required on case-by-case basis, with no formula for deciding the extent to which a regulation must interfere with property rights to constitute an unconstitutional taking without just compensation).
KOGAN, J., concurs.
NOTES
[1] Section 337.241 provided:

(1) The department or any expressway authority created under chapter 348 with eminent domain authority pursuant to chapter 74 shall acquire all rights-of-way and may prepare and record maps of reservation for any road within its jurisdiction or for any road for which it administers the right-of-way fund. Any such maps shall delineate the limits of the proposed rights-of-way for the eventual widening of an existing road or shall delineate the limits of proposed rights-of-way for the initial construction of a road. Before recording such map, the department or expressway authority shall advertise and hold a public hearing and shall notify all affected property owners of record, as recorded in the property appraiser's office, and all local governmental entities in which the right-of-way is located, by mail at least 20 days prior to the date set for hearing. After the public hearing, the department or expressway authority shall send the map to the clerk of the court of the affected county, who shall forthwith record the map in accordance with chapter 177 in the public land records of the county. Minor amendments to such maps are not subject to the notice and public hearing provisions of this section, except that property owners directly affected by changes in a minor amendment and all local governmental entities in which a minor amendment occurs must be notified by mail. Minor amendments are defined as those changes which affect less than 5 percent of the total right-of-way within the map.
(2) Upon recording, such map shall establish:
(a) A building setback line from the centerline of any road existing as of the date of such recording; and no development permits, as defined in s. 380.031(4), shall be granted by any governmental entity for new construction of any type or for renovation of an existing commercial structure that exceeds 20 percent of the appraised value of the structure. No restriction shall be placed on the renovation or improvement of existing residential structures, as long as such structures continue to be used as private residences.
(b) An area of proposed road construction within which development permits, as defined in s. 380.031(4), shall not be issued for a period of 5 years from the date of recording such map. The 5-year period may be extended for an additional 5-year period by the same procedure set forth in subsection (1).
(3) Upon petition by an affected property owner alleging that such property regulation is unreasonable or arbitrary and that its effect is to deny a substantial portion of the beneficial use of such property, the department or expressway authority shall hold an administrative hearing in accordance with the provisions of chapter 120. When such a hearing results in an order finding in favor of the petitioning property owner, the department or expressway authority shall have 180 days from the date of such order to acquire such property or file appropriate proceedings. Appellate review by either party may be resorted to, but such review will not affect the 180-day limitation when such appeal is taken by the department or expressway authority unless execution of such order is stayed by the appellate court having jurisdiction.
(4) Upon the failure by the department or expressway authority to acquire such property or initiate acquisition proceedings, the appropriate local governmental entity may issue any permit in accordance with its established procedures.
[2] The question read:

Whether subsections 337.241(2) and (3) are unconstitutional in that they provide for an impermissible taking of property without just compensation and deny equal protection and due process in failing to provide an adequate remedy.
Joint Ventures, 519 So.2d at 1072.
[3] The court reasoned that "[t]he mere `attempt' embodied in the mechanism to improperly acquire land in the guise of police regulation, thereby circumventing the procedural and substantive safeguards of Chapters 73 and 74, does not automatically equate with a compensable taking." Weisenfeld, 617 So.2d at 1073.
[4] Art. X, § 6(a), Fla. Const.; U.S. Const. amend. V.
[5] According to the briefs, the parties have now reached a settlement of the claim of A.G.W.S. for temporary taking.