667 So.2d 267 (1995)
STATE of Florida, DEPARTMENT OF ENVIRONMENTAL PROTECTION, Appellant,
v.
Foster F. BURGESS, Appellee.
No. 95-73.
District Court of Appeal of Florida, First District.
September 5, 1995.
*268 Jack Chisolm, Assistant General Counsel, Department of Environmental Protection, Tallahassee, for appellant.
Jeffrey Brown and Michael D. Jones, Winter Springs, for appellee.
VAN NORTWICK, Judge.
The Department of Environmental Protection (DEP) appeals an order granting appellee, Foster F. Burgess, a partial summary judgment and ruling that the DEP's denial of a dredge and fill permit for the construction of a dock and camping shelter on Burgess's land in Walton County, Florida, deprived Burgess of all viable economic uses for his land and, as a result, effected a "taking" of Burgess's property without just compensation. Because genuine issues of material fact remain relating to the taking issue, we reverse the trial court's order.
Burgess owns approximately 166 acres of wetlands at the mouth of the Choctawhatchee River, which DEP has designated an Outstanding Florida Water as authorized by section 403.061(27), Florida Statutes.[1] In 1992, he sought a dredge and fill permit to build a camp shelter and boardwalk on the property, which DEP denied. Acting pro se before the agency, Burgess requested an administrative hearing pursuant to section 120.57(1), Florida Statutes. Following a hearing, the hearing officer entered an order recommending denial of the permit[2] which *269 DEP adopted, in its entirety, in a final order denying Burgess's permit.
Burgess did not appeal DEP's final order, but filed suit against DEP in circuit court contending, among other things, that the actions of DEP amounted to a taking of his property. Thereafter, Burgess filed a motion for partial summary judgment on the issue of a taking. In support thereof, he filed his affidavit and the final order of DEP. In response, DEP filed the deposition of Burgess and the affidavit of Shirl Williams, an assistant administrative supervisor for Walton County, who stated that a county building permit was required to construct Burgess's proposed camping shelter.
In his deposition, Burgess acknowledged that, during negotiations surrounding the permit request, DEP offered to issue a permit if Burgess would agree to grant DEP a conservation easement which would preserve existing wetlands on a portion of his property. Burgess rejected this proposal, however, because he was not willing to assume responsibility for upkeep of the easement and restoration of the property.
This case comes to this court in a peculiar posture as it appears that DEP's final order constitutes Burgess's principal evidence that a taking has occurred.[3] Although the trial court can judicially notice the official action of an agency such as DEP, Dykes v. Quincy Telephone Co., 539 So.2d 503, 504 (Fla. 1st DCA 1989), it has not been established that the issues decided in the administrative proceeding culminating in DEP's final order are res judicata with respect to the issues in this civil suit. Clearly, the doctrine of res judicata may apply to an agency determination made pursuant to the agency's quasi-judicial decision-making authority. Florida Export Tobacco Co., Inc. v. Department of Revenue, 510 So.2d 936 (Fla. 1st DCA), rev. denied, 519 So.2d 986 (Fla. 1987). For res judicata to act as a bar to subsequent relitigation, however, there must be a final agency order in a prior proceeding and identity in "(1) the thing sued for; (2) ... the cause of action; (3) ... [the] persons and parties of the action; and (4) ... the quality in the person for or against whom the claim is made." Neidhart v. Pioneer Federal Sav. & Loan Ass'n, 498 So.2d 594, 596 (Fla. 2d DCA 1986). See also, Friends of the Everglades, Inc. v. Zoning Bd., Monroe County, 478 So.2d 1126, 1127 (Fla. 1st DCA 1985) (insufficient identity of the cause of action for application of the strict res judicata doctrine, but estoppel doctrines preclude relitigation of issues actually litigated and expressly adjudicated between the same parties). We find it troublesome that the parties here simply assume that the findings in the administrative permit proceeding constitute conclusive evidence in this civil action seeking to establish a regulatory taking. Nevertheless, we have not been asked to resolve this knotty question, *270 nor would we under the circumstances presented in this case, since the res judicata or estoppel effect to be given the administrative action was not presented to or ruled upon by the trial judge.
Even absent the troublesome issue of the effect to be given the administrative proceedings between these parties, we find that genuine issues of material fact remain in this case relating to the determination that a taking has occurred. The Fifth Amendment to the United States Constitution contains two discrete protections of property rights: "No person shall ... be deprived of ... property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. Amend. V.[4] The first of these provisions involves what is commonly referred to as the "police power," while the second concerns the power of eminent domain. Tampa Hillsborough Expressway Auth. v. A.G.W.S., 640 So.2d 54, 57 (Fla. 1994). As recognized by the Florida Supreme Court, in considering claims of a regulatory taking, courts are required to deal with the interplay of these two doctrines:
[2-5] One of the problems in the area of regulatory takings law is that:
"[C]ourts frequently fail to make the distinction between two ways in which government may abuse its power: first, government may act arbitrarily, in violation of due process; second, government may so intrusively regulate the use of property in pursuit of legitimate police power objectives as to take the property without compensation, in violation of the just compensation clause. In the first case, the government action is simply invalid; in the second case, the government action is invalid absent compensation, and so government may either abandon its regulation or validate its action by payment of appropriate compensation, i.e., by exercising its power of eminent domain."
Id. at 57 (quoting Department of Transportation v. Weisenfeld, 617 So.2d 1071, 1080 (Fla. 5th DCA 1993) (Griffin, J., concurring) quoting P. Wiseman, When the End Justifies the Means: Understanding Takings Jurisprudence In a Legal System With Integrity, 63 St. John's L.Rev. 433, 438 (1988)). Burgess did not appeal the DEP's permit denial and may not challenge the validity or propriety of the agency's action on due process or other grounds in an inverse condemnation proceeding. Department of Agriculture and Consumer Services v. Polk, 568 So.2d 35, 38 (Fla. 1990). Thus, when, as here, a court faces a claim for "just compensation" due to an alleged taking of private property resulting from the governmental regulation of that property, the court's appropriate inquiry is directed to the extent of the interference or deprivation of economic use. A.G.W.S., 640 So.2d at 58. A constitutional taking can occur when a regulation deprives the property owner of substantially all economically beneficial or productive use of the property. Id.; City of Pompano Beach v. Yardarm Restaurant, Inc., 641 So.2d 1377, 1386 (Fla. 4th DCA 1994), rev. denied, 651 So.2d 1197 (Fla. 1995), cert. denied, ___ U.S. ___, 115 S.Ct. 2583, 132 L.Ed.2d 832 (1995); Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1014, 112 S.Ct. 2886, 2893, 120 L.Ed.2d 798 (1992). In the instant case, in considering whether the permit denial deprived Burgess of all economically beneficial use of his property, the trial court must weigh evidence relating to numerous issues, including Burgess's knowledge and expectations when he purchased the property and whether all feasible economic use has been denied by the permit denial in light of DEP's offer to permit this project if Burgess granted DEP a conservation easement.[5]
Moreover, genuine issues of material fact remain to be tried with respect to whether the use proposed by Burgess would be a water pollution hazard constituting a nuisance *271 under Florida law.[6] Harmful or noxious uses of property can be proscribed by government regulation without the requirement of compensation. Lucas, 505 U.S. at 1022, 112 S.Ct. at 2897. If Burgess's proposed use constitutes a nuisance under Florida law, the proscribed use was not part of Burgess's property interests and compensation would not be due Burgess. Id. at 1026, 112 S.Ct. at 2899.
A summary judgment should not be granted unless the facts are so crystallized that nothing remains but questions of law. Coastal Petroleum Co. v. Chiles, 656 So.2d 284 (Fla. 1st DCA 1995). As in Coastal, the facts in the instant case are far from crystallized. A resolution of the taking issue in this case involves weighing the evidence relating to numerous disputed issues, including those issues briefly discussed above. Thus, the order summarily adjudicating a taking in this case was improperly granted. Id.
REVERSED.
ERVIN and BENTON, JJ., concur.
NOTES
[1] See Rule 17-302.700, Florida Administrative Code.
[2] In his order, the hearing officer found that (i) Burgess's proposed use of a "port-a-potty" to transfer human waste from the site by boat was not an acceptable method of sewage disposal and that Burgess had not provided reasonable assurances that human waste would not be introduced into the river, through accident or otherwise, and degrade water quality; (ii) that Burgess was unable to provide reasonable assurances that the proposed facilities would not attract and be used by other individuals, leaving garbage and waste behind; (iii) that Burgess's proposed project could be destroyed in a severe storm and the materials used to build the project could be strewn onto the land or into the water, thereby adversely affecting the public health, safety, welfare and property of others; (iv) that Burgess had offered no credible evidence that fishing, recreational values or marine productivity in the area would not be affected by the proposed project; (v) that the permanent nature of the proposed project will result in permanent impact on the wetlands in the vicinity of the project; and (vi) that the proposed project will lower existing ambient water quality within an Outstanding Florida Water.

In conclusion, he found:
The proposed project fails to meet [DEP's] requirements for issuance of a dredge and fill permit in view of the lack of reasonable assurances by [Burgess] that prohibited cumulative impacts will not result; that Class II waters will not be degraded; that the project is clearly in the public interest; that ambient water quality standards will not be violated and that detrimental secondary impacts will not occur. Denial of the permit is consistent with other, similar permitting decisions by [DEP].
The hearing officer also concluded (i) that Burgess failed to provide reasonable assurances that water quality standards would not be violated; (ii) that Burgess did not present any credible assurances that permitting of this project would not open the door to subdivision of his property, or that of adjacent owners, to numerous similar projects; and (iii) that Burgess did not submit a plan or procedure to demonstrate that the proposed project would not have a negative effect on Class II waters and would not violate water quality standards for those waters. Finally, with regard to section 403.918(2)(a)1.-7., Florida Statutes (1991), the hearing officer concluded that Burgess had not provided reasonable assurances (a) that the project would not adversely affect the public health, safety or welfare, or the property of others; (b) that the project would not adversely affect conservation of fish and wildlife, including endangered or threatened species and their habitat; (c) that the project would not adversely affect fishing, recreational values, or marine productivity in the project vicinity; or (d) that the project would not adversely affect current conditions and relative value of functions performed by areas affected by the proposed activity. He also found the evidence established that the proposed project would be permanent; and that no evidence was submitted regarding harmful impact of the project on navigation, water flow or harmful erosion or whether the proposed project would affect or enhance significant historical and archeological resources.
[3] The only other evidence offered was Burgess' affidavit, which primarily contains conclusory statements unsubstantiated by facts.
[4] The takings clause of the Florida Constitution provides: "No private property shall be taken except for a public purpose and with full compensation therefor... ." Art. X, § 6(a), Fla. Const.
[5] We also note that it is rare that one permit denial will demonstrate the loss of all economic use. See City of Pompano Beach v. Yardarm Restaurant, Inc., 641 So.2d 1377, 1385-1386 (Fla. 4th DCA 1994), and cases cited therein.
[6] For example, in the administrative proceeding involving these parties, the hearing officer found that Burgess's proposed project will have a permanent impact on the wetlands in the vicinity and will lower water quality within the Choctawatchee River. See, Harrell v. Hess Oil & Chemical Corp., 287 So.2d 291 (Fla. 1973). At a minimum, in determining whether the facts supporting those agency findings would also constitute a nuisance under Florida law in the instant case, the finder of fact must weigh disputed issues of material fact.