MAY, J.
We are asked to determine when a government’s plan to exercise an easement ripens for purposes of declaratory judgment relief and compensation in an inverse condemnation claim. A property owner appeals an order dismissing its complaint for both. It argues the trial court erred in dismissing both claims with prejudice. We agree and reverse.
The property owner filed a complaint against the Florida Department of Transportation (DOT) for declaratory relief and inverse condemnation. The count for declaratory relief alleged a controversy existed as to the property owner’s rights in an easement; whether the DOT imposed a burden on the easement beyond the scope of its original dedication; and, whether the DOT was required to acquire a right-of-way to use the easement. The claim for inverse condemnation alleged that the DOT should be required to condemn the right-of-way and pay for the use of the easement.
The property owner owns commercial property known as the Pembroke Plaza Shopping Center (Plaza). The Plaza is located at the intersection of State Road 7(SR7) and Pembroke Road in Broward *739 County. The land is referred to in a plat drawing, executed and recorded in Bro-ward County. It depicts a ten-foot thoroughfare dedication inside the west boundary of the land. The thoroughfare is dedicated to the perpetual use of the public in fee simple. The plat further depicts a forty-foot easement within the boundaries of the land.
The Plaza’s original site plan depicts the thoroughfare and easement. The site plan delineates that the easement provides on-site traffic circulation, access areas, parking, landscaping, and the placement of necessary utilities. The site plan and plat distinguish between dedicated thoroughfares and road and utility easements.
The DOT announced plans to widen SR 7 immediately adjacent to the Plaza. The DOT adopted a Right of Way Map and a Roadway Plan confirming its intention to widen SR 7 and take the thoroughfare and easement. The DOT’s project was put on hold due to economic circumstances, but its website indicated the project will resume once funding is available.
The DOT moved to dismiss the complaint, arguing that planning activities do not form the basis for an inverse condemnation claim; and the easement was dedicated in perpetuity to the public for road purposes. At the hearing on the motion, the DOT admitted it no longer sought dismissal of the declaratory relief claim because it was ripe for review. The parties then proceeded to argue whether the inverse condemnation claim was ripe. Despite the DOT’s concession on the claim for declaratory relief, the trial court dismissed both claims with prejudice. The court denied the motion for rehearing, leading to this appeal.
The property owner now argues the trial court erred in dismissing its claim for declaratory relief because the DOT admitted it was ripe and that the inverse condemnation claim should not have been dismissed with prejudice. The DOT responds that notwithstanding its admission, no party can stipulate to subject matter jurisdiction. It continues to argue the inverse condemnation claim was not ripe, but does agree the dismissal should not have been with prejudice.
“Generally, the standard of review of an order dismissing a complaint with prejudice is de novo.” Palumbo v. Moore, 777 So.2d 1177, 1178 (Fla. 5th DCA 2001).
A complaint requesting declaratory relief must allege:
[TJhere is bona fide, actual, present practical need for declaration; that the declaration should deal with present, ascertained or ascertainable state of facts or present controversy as to a state of facts; that some immunity, power, privilege or right of complaining party is dependent on fact or law applicable to facts; that there is some person or persons who have, or reasonably may have actual, present, adverse and antagonistic interest in the subject matter, either in fact or law....
Id. (quoting May v. Holley, 59 So.2d 686, 689 (Fla.1952)).
A declaratory judgment “ ‘may be rendered by way of anticipation with respect to any act not yet done or any event which has not yet happened....’” S. Riverwalk Invs., LLC v. City of Fort Lauderdale, 934 So.2d 620, 623 (Fla. 4th DCA 2006) (quoting § 86.051, Fla. Stat. (2003)). “A party is entitled to a declaration of rights where the ripening seeds of controversy make litigation in the immediate future appear unavoidable.” Id.
Here, the property owner seeks a declaration on three issues: (1) whether it has property rights in the easement; (2) whether the road project imposes a burden *740 on the easement beyond the scope of the original dedication; and, (3) whether the DOT is required to acquire a right-of-way before using the easement for the road project. There is an actual, present controversy as to the property owner’s rights in the easement. The DOT admitted as much. The property owner has the right to have the present status of its property declared in light of the DOT’S activities. The trial court erred in dismissing the claim for declaratory relief because the plaintiff sufficiently pled “ripening seeds of controversy.” S. Riverwalk Invs., 934 So.2d at 623.
Next, the property owner argues that its claim for inverse condemnation should not have been dismissed because: (1) whether a taking has occurred is a factual inquiry; (2) it is not required to allege a physical invasion before it can claim a loss of its access rights; and, (3) the DOT’S actions have gone beyond mere planning activities. The DOT responds these allegations do not support a takings claim because they relate to events occurring in the future.
A claim of inverse condemnation is ripe “where a government agency, by its conduct or activities, has effectively taken private property without a formal exercise of the power of eminent domain....” Rubano v. Dep’t of Transp., 656 So.2d 1264, 1266 (Fla.1995). A taking occurs when a property owner suffers a physical appropriation of his property or when a regulation “denies all economically beneficial or productive use of land.” Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992). A taking also exists when governmental action “causes a substantial loss of access to one’s property even though there is no physical appropriation of the property itself.” Palm Beach County v. Tessler, 538 So.2d 846, 849 (Fla.1989).
The complaint alleges the widening project “will” take the thoroughfare, “will” impose a burden on the easement, and “will” deprive the Plaza of access. While the issue of whether a taking has occurred is a factual inquiry, the property owner must allege the ultimate facts that, if proven at trial, would support a takings claim. See Fla. R. Civ. P. 1.110(b). Here, the property owner merely alleges a loss of access “will” occur at sometime in the future based upon the planning activities of the DOT.
Next, the property owner argues it is not required to allege a physical invasion of the property before it can claim a loss of its access rights. While there is no requirement to allege a physical invasion, the property owner must allege a loss of its access rights. A current loss of access can establish a “taking.” See Dep’t of Transp., Div. of Admin, v. Jirik, 498 So.2d 1253, 1255 (Fla.1986). Mere planning activities do not cause a current loss of access. See Auerbach v. Dep’t of Transp., 545 So.2d 514, 515 (Fla. 3d DCA 1989).
And last, the property owner argues the DOT went beyond mere planning activities when it posted the plans on its website causing an actual deprivation of a beneficial use of its property — a loss of rental value in the Plaza. In fact, some Plaza tenants have already decided not to renew their leases. The property owner relies on Tampa-Hillsborough County Expressway Authority v. A.G.W.S. Corp., 640 So.2d 54 (Fla.1994), and Department of Transportation v. DiGerlando, 638 So.2d 514 (Fla.1994).
We find A.G.W.S. and DiGerlando distinguishable. They involved maps of reservation severely restricting development inside the boundaries of land, which might be used for road widening or construction. *741 A.G.W.S., 640 So.2d at 55; DiGerlando, 688 So.2d at 515. Regulatory development restrictions are distinguishable from the planning activities in this case.
We therefore reverse the order of dismissal and remand the case to the trial court to reinstate the declaratory judgment claim. At oral argument, we were advised that there may now be funds available to start the project. Our remand allows the trial court to reconsider whether the inverse condemnation claim is now ripe, and if so, to reinstate that claim as well.

Reversed and Remanded.

DAMOORGIAN J., concurs.
LEVINE, J., concurs specially.