LEVINE, J.,
concurring specially.
I fully agree with the majority’s decision to reverse the trial court’s order of dismissal. I write to emphasize that on remand, if the inverse condemnation claim has become “ripe,” then the actions of the state may have risen to a level that is chilling to the rights of the property owner, and the state’s conduct is akin to an actionable regulatory takings ease. In an actionable takings case, “the state must pay when it regulates private property under its police power in such a manner that the regulation effectively deprives the owner of the economically viable use of that property, thereby unfairly imposing the burden of providing for the public welfare upon the affected owner.” Joint Ventures, Inc. v. Dep’t of Transp., 568 So.2d 622, 624 (Fla.1990) (footnote omitted).
Although the state contends that its actions were mere “planning,” the property owner alleges otherwise. “A taking occurs where regulation denies substantially all economically beneficial or productive use of land. Moreover, a temporary deprivation may constitute a taking.” Tampa-Hillsborough Cnty. Expressway Auth. v. A.G.W.S. Corp., 640 So.2d 54, 58 (Fla.1994); see also Palm Beach County v. Tessler, 538 So.2d 846, 849 (Fla.1989) (recognizing that a taking can occur where a property owner’s access to the property is substantially diminished). The property owner alleges that the state’s actions have caused actual deprivation of the use of the property as evidenced by the significant reduction in tenant occupancy from 90% to 50%. Additionally, the state has adopted the right-of-way map and roadway plan which would include the taking of a forty-foot easement that would eventually affect “ingress” access and internal “circulation” of traffic within the property. Although this project was put on hold due to economic factors, the state’s intent to proceed ■with the project allegedly remained intact. As the majority stated, this court was advised at oral argument that there now may be funds for the state to move forward with the road widening project. Clearly, the property owner has alleged a substantial deprivation of the productive use of its property.
The state alleges that its actions are merely planning activities and not actionable. In Auerbach v. Department of Transportation, 545 So.2d 514, 515 (Fla. 3d DCA 1989), the court found that planning activities were not actionable inasmuch as these types of administrative planning activities were “preparatory to a decision to institute eminent domain proceedings.” In the present case, the property owner alleges that the state’s actions are not “preparatory” to a decision to go forward, since the state’s actions were ceased due to financial considerations and that the decision to proceed was already made, as evidenced by the right-of-way map and roadway plan.
In Department of Transportation v. DiGerlando, 638 So.2d 514, 515 (Fla.1994), *742 the Florida Supreme Court concluded that a property owner “may maintain his current inverse condemnation action and seek to prove that the map of reservation did effect a taking of his particular property.” Similarly, in the present case, the property owner is alleging that it should be able to proceed with its inverse condemnation action based on the state’s right-of-way map and roadway plan and their effect on the property owner’s particular property.
Other jurisdictions have recognized that a plaintiff may be entitled to compensation for damage caused by pre-condemnation announcements. In Klopping v. City of Whittier, 8 Cal.3d 39, 104 Cal.Rptr. 1, 500 P.2d 1345 (1972), the court recognized a plaintiffs claim for inverse condemnation based on lost rents following a pre-con-demnation announcement. The Klopping court held that a property owner may be entitled to compensation when the state excessively delays eminent domain action or engages in other oppressive conduct even though the damage sustained by the owner may be significantly less than that which would constitute a de facto taking of property. Similarly, in Luber v. Milwaukee County, 47 Wis.2d 271, 177 N.W.2d 380 (1970), the court held that rental income loss was compensable under the “just compensation” clause of the state constitution. See also Westgate, Ltd. v. State, 843 S.W.2d 448 (Tex.1992) (collecting cases and holding that pre-condemnation activities can rise to the level of a taking where the government unreasonably delays the actual acquisition). These holdings are consistent with the Florida Supreme Court, which has held that a condemning authority cannot benefit from a depression in property value caused by a prior announcement of intent to condemn. Dep’t of Transp. v. Gefen, 636 So.2d 1345 (Fla.1994).
Finally, I write to emphasize that the right of property is fundamental to a free society. “[N]ext to the right of liberty, the right of property is the most important individual right guaranteed by the Constitution.” William Howard Taft, Popular Government: Its Essence, Its Permanence and Its Perils 90 (1913). The Florida Constitution states that “[n]o private property shall be taken except for a public purpose and with full compensation.” Art. X, § 6(a), Fla. Const. The property owner should be able to proceed, if the claim is “ripe,” to demonstrate that the state’s actions are such to warrant “full compensation.”