675 So.2d 626 (1996)
CITY OF ST. PETERSBURG, Florida, Appellant,
v.
William A. BOWEN, as Trustee of the William A. Bowen Trust Agreement, Appellee.
No. 95-03437.
District Court of Appeal of Florida, Second District.
May 22, 1996.
Rehearing Denied June 18, 1996.
*627 Michael S. Davis, City Attorney, and John Thor White, Assistant City Attorney, St. Petersburg, for Appellant.
Robert A. Butterworth, Attorney General, and Wendy S. Morris, Assistant Attorney General, Tallahassee, for Amicus Curiae State of Florida.
Robert H. Willis, Jr. of Skelton, Willis & Bennett, St. Petersburg, for Appellee.
CAMPBELL, Acting Chief Judge.
Appellant, City of St. Petersburg, Florida (City), challenges the summary judgment which resolved the issue of liability in favor of appellee, William A. Bowen, as Trustee of the William A. Bowen Trust Agreement (Bowen), in Bowen's inverse condemnation action against the City. We have jurisdiction pursuant to Rule 9.130(a)(3)(C)(iv). After a review of the record before us, we conclude that the trial judge's summary judgment was a correct application of the pertinent law to the undisputed facts of the case. We affirm.
In 1991, Bowen acquired ownership of The Lorraine Apartments in St. Petersburg. The City, in 1993, filed an administrative complaint with its Nuisance Abatement Board (NAB) against Bowen alleging that The Lorraine Apartments constituted a nuisance by virtue of the purported use of drugs by tenants and other persons at the property. No unlawful activity on the part of Bowen was alleged. The City's complaint was filed pursuant to section 893.138, Florida Statutes (1991) and the City's enabling ordinance which substantially tracks the statute. See 19-66 to 19-71, St. Petersburg City Code. Section 893.138 provides as follows:

*628 (1) Any place or premises that has been used on more than two occasions, within a 6-month period, as the site of the unlawful sale or delivery of controlled substances or as the site of a violation of s. 796.07, or any place or building used by a youth and street gang for the purpose of conducting a pattern of youth and street gang activity may be declared to be a public nuisance, and such nuisance may be abated pursuant to the procedures provided in this section.
(2) Any county or municipality may, by ordinance, create an administrative board to hear complaints regarding the nuisances described in subsection (1). Any employee, officer, or resident of the county or municipality may bring a complaint before the board after giving not less than 3 days' written notice of such complaint to the owner of the place or premises at his last known address. After a hearing in which the board may consider any evidence, including evidence of the general reputation of the place or premises, and at which the owner of the premises shall have an opportunity to present evidence in his defense, the board may declare the place or premises to be a public nuisance as described in subsection (1).
(3) If the board declares a place or premises to be a public nuisance, it may enter an order immediately prohibiting:
(a) The maintaining of the nuisance;
(b) The operating or maintaining of the place or premises; or
(c) The conduct, operation, or maintenance of any business or activity on the premises which is conducive to such nuisance.
(4) An order entered under subsection (3) shall expire after 1 year or at such earlier time as is stated in the order.
(5) An order entered under subsection (3) may be enforced pursuant to the procedures contained in s. 120.69. This subsection does not subject a municipality that creates a board under this section, or the board so created, to any other provision of chapter 120.
(6) The board may bring a complaint under s. 60.05 seeking temporary and permanent injunctive relief against any nuisance described in subsection (1).
(7) This section does not restrict the right of any person to proceed under s. 60.05 against any public nuisance.
After a hearing on the City's complaint, the NAB ordered The Lorraine Apartments closed for a period of one year effective August 16, 1993. As a consequence of the ruling, Bowen was unable to put The Lorraine Apartments to any economic use and the property's fair market value was substantially diminished. Bowen has received no compensation from the City.
On August 11, 1993, Bowen filed a complaint for inverse condemnation against the City in circuit court. Bowen alleged that the closure of The Lorraine Apartments constituted a taking for a public purpose requiring just compensation under the Fifth and Fourteenth Amendments of the United States Constitution and article X, section 6, and article I, section 9 of the Florida Constitution. The City moved to dismiss Bowen's complaint, asserting in part that an action for inverse condemnation may not arise from a temporary taking. On January 19, 1994, the trial judge granted the City's motion by finding that "the closing of The Lorraine Apartments, for one year, is a temporary taking. An action for inverse condemnation does not arise from a temporary taking." From that decision, Bowen filed an appeal and, on September 28, 1994, this court reversed per curiam, citing Tampa-Hillsborough County Expressway Authority v. A.G.W.S. Corp., 640 So.2d 54 (Fla.1994). Bowen v. City of St. Petersburg, Fla., 642 So.2d 837 (Fla. 2d DCA 1994). On remand, both the City and Bowen moved for summary judgment upon stipulated facts.
On July 6, 1995, summary judgment was entered for Bowen. The trial judge found that the City imposed a temporary loss of all economic use of the apartments. The trial court also held that use of the property as an apartment house was not a nuisance at common law. The trial court concluded Bowen was entitled to compensation for the one-year taking of his property with the total amount of such compensation to be determined subsequently by the court.
*629 At the outset, we note that the action of closing completely the apartments for one year was, in regard to Bowen's property rights, one of the most invasive methods of abating the purported nuisance that was available. In this appeal, we are presented with the narrow issue of whether the complete closure of The Lorraine Apartments for one year in order to curtail the illegal use of drugs by tenants and others was a compensable taking by the City.
As support for the summary judgment for Bowen, the trial judge has entered an "Order Granting Summary Judgment In Favor Of Plaintiff, William A. Bowen, Trustee." That order is complete, concise, scholarly and well-grounded. We see no need to attempt to add our reassessment to those findings and conclusions and, therefore, set forth below the trial judge's order, in full, and adopt it as our own:
Both Plaintiff, William A. Bowen, Trustee and Defendant, City of St. Petersburg, have filed Motions for Summary Judgment and submitted this case for decision as a matter of law on the stipulated facts as revealed in the record. Neither party asserts that there are any controverted issues of fact.
This is a Complaint for Inverse Condemnation. The City of St. Petersburg, through its Nuisance Abatement Board ordered the 15 unit apartment building, Lorraine Apartments, on land owned by Plaintiff, to be shut down for a one year period. The land and building can be put to no other use during this one year close down period.
The plaintiff does not contest the findings of the Nuisance Abatement Board (NAB) nor does the complaint allege that the one-year closure was not a proper exercise of police power. Plaintiff merely alleges that the closure is a compensable taking for which there has been no payment. He does not allege that the NAB findings of fact were unfounded or that its closure order was contrary to the Ordinance of the City.
The Florida Supreme Court in Joint Ventures, Inc. v. Dept. of Transportation, 563 So.2d 622 (Fla.1990) and again in Tampa-Hillsborough County Expressway Authority v. A.G.W.S. Corporation, 640 So.2d 54 (Fla.1994) has clearly recognized that if the state, through the use of its police power, deprives the owner of property of the economically viable use of his property, then that property owner must be compensated. Also, in these cases, the Florida Supreme Court recognized that temporary takings are compensable.
Regulations found by the courts to be invalid because they deprive landowners of substantially all use of their property without compensation are not ordinarily struck down as unconstitutional. The government is forced to choose between paying just compensation to keep the regulation in effect or removing the regulation.
[T]he state must pay when it regulates private property under its police power in such a manner that the regulation effectively deprives the owner of the economically viable use of that property, thereby unfairly imposing the burden of providing for the public welfare upon the affected owner. Joint Ventures, 563 So.2d at 624 (footnotes omitted).
Based upon the A.G.W.S. case and the Joint Ventures case, as well as numerous United States Supreme Court cases, if the closure of the Lorraine Apartments by the nuisance abatement board resulted in depriving the owner of all economic use of the property, even if this deprivation was temporary, then as a matter of law there is deemed to have been a taking and the property owner is entitled to be compensated for the economic loss suffered.

First English [Evangelical] Lutheran Church v. County of Los Angeles, 482 U.S. 304 [107 S.Ct. 2378, 96 L.Ed.2d 250] (1987) addresses the issue of compensating a landowner for a temporary taking. In that case it was held that:
A landowner is entitled to bring an action in inverse condemnation as a result of the self-executing character of the constitutional provision with respect to compensation.
"Temporary" regulatory takings which, as here, deny a landowner all use of his property, are not different in kind *630 from permanent takings for which the Constitution clearly requires compensation. Once a court determines that a taking has occurred, the government retains the whole range of options already availableamendment of the regulation, withdrawal of the invalidated regulation, or exercise of eminent domain. But where the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective. Invalidation of the ordinance without payment of the fair value for the use of the property during such period would be a constitutionally insufficient remedy.
The City has placed great weight in its theory that by use of its police power it can avoid having to compensate the plaintiff even if the action of the NAB deprives the plaintiff of all economic use of his property. This belief by the City is misplaced.
We look for guidance to the case of Lucas v. South Carolina Coastal Council, [505 U.S. 1003] 112 S.Ct. 2886 [120 L.Ed.2d 798] (U.S.1992). In that case, Mr. Lucas owned some beach front property in South Carolina that he wished to develop. The South Carolina legislature subsequent to his acquisition of the property passed a statute called "The Beachfront Management Act" which essentially prevented Mr. Lucas from developing his property. Mr. Lucas then filed suit contending the legislature effected a taking of his property without just compensation.
Mr. Lucas did not take issue with the validity of the Act as a lawful exercise of South Carolina's police power, but contended that the Act's complete extinguishment of his property's value entitled him to compensation regardless of whether the legislature had acted in furtherance of legitimate police power objectives. The Trial Court agreed.
The Supreme Court of South Carolina reversed. It found dispositive what it described as Lucas's concession "that the Beachfront Management Act [was] properly and validly designed to preserve ... South Carolina's beaches."
The South Carolina Supreme Court ruled that when a regulation respecting the use of property is designed to prevent serious public harm[1], no compensation is due under the takings clause[2] regardless of the regulation's effect on the property's value. The United States Supreme Court disagreed with that ruling and reversed.
The United States Supreme Court held that if a state or municipality seeks to sustain a regulation that deprives a landowner of all economically beneficial use, it must compensate the owner unless "the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interest was not part of his title to begin with." In other words, unless the government can show that the landowner had no reasonable expectation of the proposed use when he acquired the property, the owner must be compensated for denial of that use.
In order to prevail on its affirmative defense of the nuisance exception, the City has the burden of proving that when Mr. Bowen purchased the property, he had no reasonable expectation that the Lorraine Apartments could be used as rental apartments, as that is the use which has now been proscribed.

*631 The Lucas case limits the nuisance exception to those cases involving a common law nuisance. In the present case, there is no common law nuisance being prevented by the closure. The prohibited activity was any use of the apartment building. The NAB order did not really proscribe any particular nuisance, such as would be done by enjoining the sale or use of drugs on the premises. Such an injunction would leave other legal uses available to the Plaintiff, but the order involved here left no use available.
There is no common law nuisance doctrine which prohibits the use of a building for rental purposes. The nuisance exception applies only to restrictions to use which were inherent in an owner's fee simple estate; a use which was not part of his title initially.
In Lucas, the Court recognized two categories of regulatory action which are compensable without inquiry into the public interest advanced in support of the restraint: (1) where the regulation compels the landowner to suffer a physical invasion upon the property, or (2) where the regulation denies all economically beneficial or productive use of the land. It is the second category of actions under which Plaintiff claims relief in the instant case.

Lucas held that "[i]n the extraordinary circumstance when no productive or economically beneficial use of land is permitted, it is less realistic to indulge our usual assumption that the legislature is simply adjusting the benefits and burdens of economic life. Total deprivation of beneficial use is, from the landowner's point of view, the equivalent of a physical appropriation." Id. [at 1017, 112 S.Ct.] at 2894, citing San Diego Gas & Electric Co. v. San Diego, 450 U.S. 621, 652 [101 S.Ct. 1287, 1304, 67 L.Ed.2d 551] (1981).

Lucas further states that "when the owner of real property has been called upon to sacrifice all economically beneficial uses in the name of a common good, that is, to leave his property economically idle, he has suffered a taking. Id. [at 1019, 112 S.Ct.] at 2895. In these situations, "the functional basis for permitting the government to effect property values by regulation, without compensation, does not apply to the relatively rare situations where the government has deprived a landowner of all economically beneficial uses." Id.

There can really be no question that by virtue of its closing order, the Nuisance Abatement Board has deprived the Plaintiff of all economic use of this property. The property, a 15 unit apartment building, can be put to no other use during the close down period. If deprived of all economic use, a taking has occurred. The law is equally clear that a temporary taking is compensable. In A.G.W.S., supra, at 58, the court said:
"A taking occurs where regulation denies substantially all economically beneficial or productive use of land. Moreover, a temporary deprivation may constitute a taking. First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987).
The only real issue in this case is whether the nuisance exception is applicable. Prior to the Lucas decision, the nuisance exception argument was a viable defense in many cases, although not automatic. Lucas severely restricted the nuisance exception by limiting it to common law nuisances.
The fact that the City did not take title to the Bowen property (it was merely closed for one year) does not defeat the `taking' aspect of plaintiff's claim in this case.
In A.G.W.S., supra, the court said at 57, "... government may so intrusively regulate the use of property in pursuit of legitimate police power objectives as to take the property without compensation, in violation of the just compensation clause. "`[t]he government action is invalid absent compensation, and so government may either abandon its regulation or validate its action by payment of appropriate compensation, i.e., by exercising its power of eminent domain."
During World War II private property was appropriated by the United States. Though the takings were temporary there *632 was no question that compensation would be required for the Government's interference with the use of the property. See the case of Kimbal [Kimball] Laundry Co. v. United States, 388 [338] U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765 [1949]; United States v. Petty Motor Co., 327 U.S. 372, 66 S.Ct. 596, 90 L.Ed. 729 [1946]; United States v. General Motors Corp., 323 U.S. 373, 65 S.Ct. 357, 89 L.Ed. 311 [1945].
If the City of St. Petersburg wants to wage a war on drugs in part by means of this type of temporary taking then the City will be required to pay landowners just compensation.
Invalidation of the ordinance is not a sufficient remedy to meet the demands of the Just Compensation Clause under the Fifth Amendment of the U.S. Constitution or under Art. X, § 6(a) of the Florida Constitution.
As the Florida Supreme Court in Joint Ventures noted:
"The state must pay when it regulates private property under its police power in such a manner that the regulation effectively deprives the owner of the economically viable use of that property, thereby unfairly imposing the burden of providing for the public welfare upon the affected owner."
The Court concludes that Plaintiff is entitled to a summary judgment order to the effect that he is entitled to compensation for the one year taking of his property. He is entitled to payment of the fair value for the use of the property for one year. The manner in which the total amount of compensation will be fixed has not yet been determined. The parties may, by motion, present this issue to the Court.
Affirmed.
FRANK and BLUE, JJ., concur.
NOTES
[1] In the case at bar there is no doubt that the ordinance is designed to prevent serious public harm by impacting on the use or sale of illegal drugs.
[2] The complaint in the case at bar alleges that compensation is required under the taking clauses of both the 5th Amendment and Art. X, § 6(a) of the Florida Constitution and generally as a matter of `due process'.

There is no doubt that the 5th Amendment taking clause is applicable to the states through the 14th Amendment. Penn Central Transportation Co., et al., v. NYC, et al., [438 U.S. 104, 108 fn 3, 98 S.Ct. 2646, 2650 fn 3] 57 L.Ed.2d 631, 659 fn 3; reh den [439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198 (___ [1978]). Penn Central also informs that the term `property' is not the physical thing; rather it is the group of rights inherent in the citizen's relationship to the physical thing, such as the right to possess, use, and dispose of one's land. At issue then is the deprivation to the owner, not the accretion to the sovereign.