717 So.2d 601 (1998)
CITY OF MIAMI, a municipal corporation, and The City of Miami Nuisance Abatement Board, a quasi-judicial board, Appellants,
v.
KESHBRO, INC., a Florida corporation, d/b/a Stardust Motel; and Harish Gihwala, individually, Appellees.
No. 98-1151.
District Court of Appeal of Florida, Third District.
September 16, 1998.
*602 Jose Fernandez, Assistant City Attorney; Sweetapple, Broeker & Varkas and Paul B. Feltman, for appellants.
David Forestier, North Miami, for appellees.
Thomas A. Bustin, St. Petersburg, for the City of St. Petersburg as amicus curiae.
Before GODERICH and FLETCHER, JJ., and SMITH, LARRY G., Senior Judge.
FLETCHER, Judge.
The City of Miami [City] and the City of Miami Nuisance Abatement Board[1] [Board] appeal the trial court's summary judgment order (as clarified) determining the issue of liability in favor of Keshbro, Inc. and Harish Gihwala [the owners] for the temporary taking[2] of their property (The Stardust Motel) by virtue of the Board's issuance of a nuisance abatement order which directed closure of the property for approximately six months. We reverse the summary judgment order and remand for further proceedings.
The owners have, since 1988, been the operators of the Stardust Motel, a fifty-seven-unit building located at 6730 Biscayne Boulevard, Miami, Florida. The property has a long history of drug and prostitution activity thereon.[3] In 1992, the Board ordered the motel closed in an effort to curtail such illicit occurrences. It was re-opened in 1993 with the agreement of the owners to maintain the premises free of the proscribed activities. As evidenced by a lengthy list of subsequent criminal events that took place at the motel, the effort to resolve the problem was a failure. As a consequence, a second case regarding the motel was heard by the Board in 1996-97, at which time a stipulation was entered into by which the owners agreed not to contest a Board finding that the premises constituted a public nuisance. The stipulation also provided that six motel rooms be closed for six months. Numerous additional provisions were included in an effort to terminate the nuisance. A Board order was then entered based on the stipulation.
Notwithstanding the stipulation and order, further drug and prostitution-related activities took place on the property, leading the Board to order the closure of seven more rooms. This additional closing did not resolve the problem and the list of proscribed incidents occurring at the motel grew longer. Faced with this continuing activity, the Board ordered the entire property closed for six months. The City and the Board then sought and obtained from the circuit court an injunction enforcing the closure order.[4]
The circuit court, in its injunctive order, left open for future resolution a claim by the *603 owners for compensation by the City for a temporary taking of the property. In 1997 the owners filed their action alleging that the Board's complete closure of their motel for six months deprived them of all economic use of their property, and thus was a taking for which they are entitled to be compensated by the City. The circuit court granted the owners' motion for summary judgment, ruling that the City is liable to the owners as claimed.
We are faced with a deceptively simple appearing question: whether the owners are required to be compensated by the City for a valid exercise of the City's power to abate nuisances because that exercise deprived the owners, at least temporarily,[5] of all economic use of their property. The owners cite Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 112 S.Ct. 2886, 120 L.Ed.2d 798 (1992), in support of their position that a total regulatory[6] taking requires compensation unless the proscribed use was not part of the owner's title to begin with, thus, as their motel use was an allowed use when they acquired the property, Lucas requires compensation. For further support they cite City of St. Petersburg v. Bowen, 675 So.2d 626 (Fla. 2d DCA), rev. denied, 680 So.2d 421 (Fla.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 1120, 137 L.Ed.2d 320 (1997), wherein the Second District Court of Appeal concluded that the action of the City of St. Petersburg in (temporarily) closing an apartment complex in order to curtail drug use by the tenants was a compensable taking as it deprived the owner of all viable economic uses of the property during the closure period.
On the other hand, the City and the Board also cite Lucas in support of their position, contending that the Board's order and the injunction based thereon are aimed at terminating the continuation of activities that have long been considered nuisances. As a consequence, they contend, the Board's action fits neatly into the holding expressed in Lucas, 505 U.S. at 1031-32, 112 S.Ct. 2886:
"As we have said, a `State, by ipse dixit, may not transform private property into public property without compensation.... ` [citation omitted]. Instead, as it would be required to do if it sought to restrain Lucas in a common-law action for public nuisance, South Carolina must identify background principles of nuisance and property law that prohibit the uses he now intends in the circumstances in which the property is presently found. Only on this showing can the State fairly claim that, in proscribing all such beneficial uses, the [governmental regulation] is taking nothing."
The City and the Board thus must prove, in order to avoid paying compensation, that at the time the owners purchased the property, prior principles of nuisance law prohibited its use for the purpose proscribed by the Board's order as enforced by the injunction.
The City and the Board also urge on us Zeman v. City of Minneapolis, 552 N.W.2d 548 (Minn.1996) and Bennis v. Michigan, 516 U.S. 442, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996), for their position that no compensation is required under the facts here. These cases, however, are inappropos. In Zeman, the trial court had determined that Zeman did not establish that he had been deprived by the City's action of all viable economic uses of his property. The Minnesota Supreme Court thus found Lucas to be inapplicable, see Zeman, 552 N.W.2d at 553 n. 4, and then applied the "test" set forth in Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978). This test involves consideration of the economic impact of the regulation on the sufferer of the loss, the extent to which the regulation interferes with distinct investment-backed expectations, and an analysis of the character of the governmental action, including whether it is a public "harm-preventing" regulation or one that "confers benefits" on the public. In this case, however, we are not faced with the Penn Central test as the owners here have, as will be discussed, *604 been deprived of all viable economic uses of the Stardust Motel, thus Lucas applies.
Neither does Bennis v. Michigan apply here as it involved a proceeding for the forfeiture of property, an action that the United States Supreme Court has concluded is governed more by history than by constitutional logic. In Bennis, the Court followed what it observed to be "a long and unbroken line of cases hold[ing] that an owner's interest in property may be forfeited by reason of the use to which the property is put even though the owner did not know that it was to be put to that use." Bennis, 516 U.S. at 446, 116 S.Ct. 994. Justice Thomas, in his concurring opinion, id. at 454, 116 S.Ct. 994, shed additional light on the unusual result that history had ordained:
"As the Court notes, evasion of the normal requirement of proof before punishment might well seem `unfair.' ... One unaware of the history of forfeiture laws and 200 years of this Court's precedent regarding such laws might well assume that such a scheme is lawless  a violation of due process. As the Court remarked 75 years ago in ruling upon a constitutional challenge to forfeiture of the property of an innocent owner:
`If the case were the first of its kind, it and its apparent paradoxes might compel a lengthy discussion to harmonize the [statute at issue] with the accepted tests of human conduct.... There is strength ... in the contention that ... [the statute at issue] seems to violate that justice which should be the foundation of the due process of law required by the Constitution.' J.W. Goldsmith, Jr.-Grant Co. v. United States, 254 U.S. 505, 510, 41 S.Ct. 189, 190, 65 L.Ed. 376 (1921).'
But the Court went on to uphold the statute, based upon the historical prevalence and acceptance of similar laws. Id., at 510-511, 41 S.Ct., at 190-191.
This case is ultimately a reminder that the Federal Constitution does not prohibit everything that is intensely undesirable."
As we are not dealing with a proceeding for forfeiture of property, Bennis does not help resolve our issue, despite the City's contentions otherwise.
We arrive at the conclusion that Lucas provides the controlling principles. In that regard, a review of the Board's order reveals that it directs the closing for six months of the entire Stardust Motel property, a directive enforced by the circuit court's subsequent injunctive order. The Board thus appears to have precluded the only economically viable use of the property  a fifty-seven-unit motel[7]  which use is not a nuisance at common law. It would thus seem initially that the City and the Board do not meet the test of Lucas for avoiding the payment of compensation for a taking.
However, when we look beyond the limited wording of the closure orders to the property's extensive history upon which the orders are based, the record reflects that the motel was, in reality, not a motel, but rather a brothel and drug house which the owners, for whatever reason, failed to stop operating on their property. The record shows that the prostitution and drug-related activities were inextricably intertwined with the motel.[8] In order to preclude these proscribed activities, it was necessary to bar access to the base of operations, which, the Board concluded, could only be done by completely closing the Stardust Motel. See Health Clubs of Jacksonville, Inc. v. State, 381 So.2d 1174 (Fla. 1st DCA 1980); Five Sky, Inc. v. State, 131 So.2d 39 (Fla. 3d DCA 1968).
While the City's and the Board's action denied the owners all economically beneficial uses of the property, no compensation is *605 required as the actual uses prohibited were a brothel and drug house which have no "tradition of protection at common law," Lucas, 505 U.S. at 1016, 112 S.Ct. 2886, and which were not a part of the owners' title, or bundle of rights, at the time they acquired the property, as such uses have, since long prior thereto, been considered to be nuisances. See Atkinson v. Powledge, 123 Fla. 389, 167 So. 4 (1936); King v. State, 17 Fla. 183 (1879). As a consequence, we reverse the summary judgment in favor of the owners and remand for further proceedings consistent herewith.
NOTES
[1] By section 893.138(2), Florida Statutes (1995), the Florida legislature has authorized each of the various counties and municipalities of the state to create an administrative board, quasi-judicial in nature, see Mesa v. City of Miami Nuisance Abatement Bd., 673 So.2d 500 (Fla. 3d DCA 1996), to hear and take action on complaints regarding certain nuisances. The City established its Board pursuant to this authorization [Miami, Fl., Code § 46-2], with jurisdiction over such proscribed activities as drug sales, gambling, prostitution-related activity, and gang-related activity [Miami, Fl., Code § 46-1(a),(b),(c), and (f)]. The Board is authorized to impose sanctions, including closure for up to one year of premises on which such proscribed activities take place [§ 893.138(3)(b),(4), Fla. Stat. (1995); Mesa v. City of Miami Nuisance Abatement Bd.].
[2] Pursuant to the Fifth and Fourteenth Amendments of the United States Constitution and Article X, Section 6, and Article 1, Section 9 of the Florida Constitution.
[3] No unlawful activity on the part of the owners has been alleged.
[4] During this lengthy process the owners filed legal challenges to some of the Board's actions. They have all been resolved and we are concerned here only with the taking issue.
[5] Temporary takings are compensable as set forth in First English Evangelical Lutheran Church v. County of Los Angeles, 482 U.S. 304, 107 S.Ct. 2378, 96 L.Ed.2d 250 (1987).
[6] As opposed to a taking by an actual physical invasion of the property.
[7] Owner Gihwala and his family reside on the premises, in four of the rooms. The City's suggestion that this alone is an economically viable use of a 57-unit motel defies the logic of finance. The City's further suggestion that the zoning code allows some 60 uses other than as a motel ignores the fact that the structure on the property was designed and built as a motel. Transforming it into some other use (a shopping mall? a gasoline station?) for the six-month-closure period lacks any basis in reason.
[8] It is for this reason that we do not certify conflict with City of St. Petersburg v. Bowen; i.e., Bowen does not include any discussion of inextricable intertwining of proscribed uses with other, valid, uses.